# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | | |
|---|---|---|
| SARAH A. SCOTT, | ) | |
|    Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:05cv00043 |
| | ) | **MEMORANDUM OPINION** |
| | ) | |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
|  Commissioner of Social Security, | ) | By:   Pamela Meade Sargent |
|    Defendant | ) | United States Magistrate Judge |

In this social security case, I affirm the final decision of the Commissioner denying benefits.

*I. Background and Standard of Review*

Plaintiff, Sarah A. Scott, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claim for supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 1381 *et seq.* (West 2003 & Supp. 2006). Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge upon transfer pursuant to the consent of the parties under 28 U.S.C. § 636(c)(1).

The court's review in this case is limited to determining if the factual findings

-1-

of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence, but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Scott protectively filed her application for SSI[1] on or about October 2, 2003, alleging disability as of April 29, 1980, based on depression, panic and anxiety attacks, insomnia, headaches and mental retardation. (Record, ("R."), at 57-60, 82.) Scott's claim was denied both initially and on reconsideration. (R. at 39-41, 45, 46-48.) Scott then requested a hearing before an administrative law judge, ("ALJ"). (R. at 49.) The ALJ held a hearing on October 26, 2004, at which Scott was represented by counsel. (R. at 223-35.)

By decision dated January 5, 2005, the ALJ denied Scott's claim. (R. at 17-24.) The ALJ found that Scott had not engaged in substantial gainful activity since the

---

[1]Scott filed a previous application for SSI in 2002 alleging disability due to only a learning disability. (R. at 55-56, 64.) After Scott failed to attend a consultative examination, the state agency rescheduled it on two more occasions. (R. at 33.) After Scott failed to attend any of the consultations, the state agency denied Scott's claim at the initial stage based upon the submitted evidence consisting of grade-school records. (R. at 30, 33-38.) Scott sought no further action of that claim, but reapplied in 2003, alleging that she also had disabling depression and anxiety since birth. (R. at 82.)

alleged onset of disability. (R. at 23.) The ALJ found that the medical evidence established that Scott had a severe impairment, namely mild mental retardation, but he found that Scott did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 23.) The ALJ further found that Scott's allegations regarding her limitations were not totally credible. (R. at 23.) The ALJ found that Scott had the residual functional capacity to perform work at all exertional levels, with an emotional disorder imposing no significant restrictions, but with limitations to activities primarily dealing with things versus people and intellectual endowment pursuant to the opinion of psychologist Robert S. Spangler. (R. at 23, 206-12.) The ALJ found that Scott had no past relevant work. (R. at 23.) Based on Scott's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ concluded that Scott could perform jobs existing in significant numbers in the national economy. (R. at 24.) Thus, the ALJ found that Scott was not under a disability as defined in the Act, and that she was not entitled to benefits. (R. at 24.) *See* 20 C.F.R. § 416.920(g) (2005).

After the ALJ issued his opinion, Scott pursued her administrative appeals, (R. at 13), but the Appeals Council denied her request for review. (R. at 7-9.) Scott then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 416.1481 (2005). The case is before this court on Scott's motion for summary judgment filed February 7, 2006, and the Commissioner's motion for summary judgment filed March 8, 2006.

*II. Facts*

Scott was born in 1980, (R. at 55), which classifies her as a "younger person" under 20 C.F.R. § 416.963(c). Scott testified that she had a ninth-grade education and that she attended special education classes.[2] (R. at 228.) Scott indicated that she had never worked because she was "not mentally able."[3] (R. at 82.)

Norman Hankins, a vocational expert, testified at Scott's hearing. (R. at 233-34.) Hankins was asked to consider an individual of Scott's height, weight, education and work background, who had the residual functional capacity to perform work at all exertional levels, who was intellectually limited as indicated by psychologist Spangler and who had an emotional disorder with no significant restrictions regarding her work-related abilities, but who was limited to activities primarily dealing with things compared to working with people. (R. at 206-12, 233.) Hankins stated that there were jobs available within those limitations, including jobs as a cleaner, a maid, an industrial cleaner, a dishwasher, a laundry worker, a material handler and a hand packer. (R. at 233-34.)

In rendering his decision, the ALJ reviewed records from Lee County Schools; Wise County Schools; Lee County Community Hospital; Stone Mountain Health Services; D. Kaye Weitzman, L.C.S.W.; and Robert S. Spangler, Ed.D., a licensed psychologist.

---

[2] Scott indicated on her first application that she completed the sixth-grade, however, when she reapplied, she indicated that she completed the tenth-grade. (R. at 70, 88.)

[3] In 2004, Scott reported that she last worked in 1996 as a house cleaner for a private party. (R. at 207.) She reported that she did this work one day every two weeks. (R. at 207.)

-4-

Scott's school records indicate that in 1988 the Wechsler Intelligence Scale for Children-Revised, ("WISC-R"), test was administered, and Scott obtained a verbal IQ score of 87+6, a performance IQ score of 87+6 and a full-scale IQ score of 86+5. (R. at 132.) The examiner reported that Scott had intellectual functioning within the low average to borderline range. (R. at 132.) The examiner also reported that Scott appeared to have petit mal seizures and that she should be evaluated for this in addition to an attention deficit hyperactivity disorder. (R. at 131, 133.) It was recommended that Scott be placed in an educable mentally handicapped class for academic support. (R. at 124.) In 1991, the WISC-R test was again administered, and Scott obtained a verbal IQ score of 73, a performance IQ score of 92 and a full-scale IQ score of 81. (R. at 152.) In 1993, it was reported that Scott was working at the second- and third-grade level in reading. (R. at 194.) She was working at the fourth-grade level in math. (R. at 194.) She was within normal limits for her age in her communication skills, social/adaptive behavior, self-help skills, vocational skills and psycho-motor skills. (R. at 194.) In 1994, the Wechsler Intelligence Scale for Children-III, ("WISC-III"), test was administered, and Scott obtained a verbal IQ score of 64, a performance IQ score of 77 and a full-scale IQ score of 68. (R. at 182.) The examiner noted that Scott's scores on the WISC-III were probably "an underestimate" of her true ability level. (R. at 183.) The examiner also opined that Scott's emotional functioning appeared to be immature. (R. at 184.)

On February 25, 2004, D. Kaye Weitzman, L.C.S.W., evaluated Scott for her complaints of anxiety and panic attacks. (R. at 202-04.) Scott reported episodic panic attacks since her childhood. (R. at 202.) Her mood was described as normal, her affect flat and her insight as poor. (R. at 203.) Weitzman diagnosed anxiety disorder, not

otherwise specified, and depressive disorder, not otherwise specified. (R. at 203.) Weitzman indicated that Scott had a current and past Global Assessment of Functioning, ("GAF"), score of 40.[4] (R. at 203.)

On May 12, 2004, Scott was seen at Stone Mountain Health Services for a physical examination. (R. at 215-16.) Scott denied any acute complaints. (R. at 215.) She reported that she was receiving counseling from Weitzman. (R. at 215.) Scott also reported that she did not take any medications and that she was not interested in doing so. (R. at 215.) Examination was normal. (R. at 215.) Scott was diagnosed with anxiety and depression. (R. at 215.)

On July 27, 2004, Robert S. Spangler, Ed.D., a licensed psychologist, evaluated Scott at the request of Scott's attorney. (R. at 206-09.) Spangler reported that Scott's general activity level was slow. (R. at 206.) Spangler reported that Scott was "medicated." (R. at 206.) He reported that Scott was nervous and depressed. (R. at 206.) Scott frequently needed the instructions repeated, but demonstrated good concentration. (R. at 206.) Spangler reported that Scott's adaptive behavior was consistent with mild mental retardation, which appeared to be a lifelong condition. (R. at 208.) The WAIS-III test was administered, and Scott obtained a verbal IQ score of 70, a performance IQ score of 80 and a full-scale IQ score of 73. (R. at 208-09.)

---

[4]The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994). A GAF of 31-40 indicates that the individual has "[s]ome impairment in reality testing or communication ... OR major impairment in several areas, such as work or school, family relations, judgment, thinking or mood...." DSM-IV at 32.

Spangler diagnosed dysthymic disorder, early onset, mild, caffeine intoxication (anxiety disorder could not be diagnosed due to caffeine intake), alcohol abuse (full remission), nicotine dependence and mild mental retardation. (R. at 209.) Spangler assessed a GAF score of 60[5] to 65.[6] (R. at 209.)

Spangler completed a mental assessment indicating that Scott had a limited but satisfactory ability to follow simple work rules, to interact with supervisors, to maintain attention/concentration, to understand, remember and carry out simple job instructions and to maintain personal appearance. (R. at 210-12.) He indicated that Scott had a satisfactory to seriously limited, but not precluded, ability to relate to co-workers, to deal with work stresses, to function independently, to behave in an emotionally stable manner and to relate predictably in social situations. (R. at 210-11.) He indicated that Scott had a seriously limited, but not precluded, ability to deal with the public, to use judgment and to demonstrate reliability. (R. at 210-11.) Spangler indicated that Scott had a seriously limited, but not precluded, to no ability to understand, remember and carry out detailed instructions and no ability to understand, remember and carry out complex instructions. (R. at 210-11.) He indicated that Scott was not capable of managing her own benefits. (R. at 212.) He also indicated that it would be anticipated that Scott's impairments would cause her to be absent from work more than two days a month. (R. at 212.) He based these findings on his diagnosis of mild mental retardation and mild dysthymic disorder. (R. at 210-11.)

---

[5] A GAF of 51-60 indicates that the individual has "[m]oderate symptoms ... OR moderate difficulty in social, occupational, or school functioning ...." DSM-IV at 32.

[6] A GAF of 61-70 indicates "[s]ome mild symptoms ... OR some difficulty in social, occupational, or school functioning ... , but generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV at 32.

*III. Analysis*

The Commissioner uses a five-step process in evaluating SSI claims. *See* 20 C.F.R. § 416.920 (2005); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. § 416.920 (2005). If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 416.920(a) (2005).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B) (West 2003 & Supp. 2006); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated January 5, 2005, the ALJ denied Scott's claim. (R. at 17-24.) The ALJ found that the medical evidence established that Scott had a severe

impairment, namely mild mental retardation, but he found that Scott did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 23.) The ALJ found that Scott had the residual functional capacity to perform work at all exertional levels, with an emotional disorder imposing no significant restrictions, but with limitations to activities primarily dealing with things versus people and intellectual endowment pursuant to the opinion of psychologist Spangler. (R. at 23, 206-12.) The ALJ found that Scott had no past relevant work. (R. at 23.) Based on Scott's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ concluded that Scott could perform jobs existing in significant numbers in the national economy. (R. at 24.) Thus, the ALJ found that Scott was not under a disability as defined in the Act, and that she was not entitled to benefits. (R. at 24.) *See* 20 C.F.R. § 416.920(g) (2005).

In her brief, Scott argues that the ALJ erred by improperly determining her residual functional capacity. (Plaintiff's Motion For Summary Judgment And Memorandum Of Law, ("Plaintiff's Brief"), at 6-10.) Scott further argues that the ALJ erred in finding that her condition did not meet or equal the listed impairment for mental retardation found at 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05(C). (Plaintiff's Brief at 10-13.)

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. This court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by

substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Scott contends that her mental impairment meets or equals the criteria for § 12.05(C), the listing for mental retardation. To meet the impairment requirements of § 12.05(C), a claimant's mental functioning must be limited to the extent that she scores between 60 and 70 on a valid IQ test, and she must suffer from another impairment that imposes a significant work-related limitation. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(C) (2005). Additionally, the mental deficits must have manifested during the claimant's developmental stage, i.e., prior to age 22. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. Scott's school records show three sets of intellectual testing scores. In 1988, Scott obtained a verbal IQ score of 87+6, a performance IQ score of 87+6 and a full-scale IQ score of 86+5. (R. at 132.) In 1991, Scott obtained a verbal IQ score of 73, a performance IQ score of 92 and a full-scale IQ score of 81. (R. at 152.) In 1994, Scott obtained a verbal IQ score of 64, a performance IQ score of 77 and a full-scale IQ score of 68. (R. at 182.) While these IQ scores placed Scott's IQ between 60 and 70, the examiner noted that Scott's IQ scores were probably "an underestimate" of her true ability level. (R. at 183.) In addition, testing performed in 2004 indicates that Scott obtained a verbal IQ score of 70, a performance IQ score of 80 and a full-scale IQ score of 73.[7] (R. at 208-09.) While

---

[7]Although Scott's IQ scores were consistently above 70, the ALJ gave Scott's diagnosis of mild mental retardation the benefit of the doubt. (R. at 20-21.)

Scott has only a ninth-grade education, including some special education classes, and has difficulty reading and with math skills, this does not rise to the level of impairment required by § 12.05(C). For these reasons, I find that Scott is unable to meet the first prong of § 12.05(C). That being the case, it is unnecessary to analyze whether she meets the second prong. Thus, I find that substantial evidence supports the ALJ's finding that Scott does not meet the criteria for mental retardation under § 12.05(C).

Scott also contends that the ALJ erred by improperly determining her residual functional capacity. (Plaintiff's Brief at 6-10.) The ALJ found that Scott had the residual functional capacity to perform work at all exertional levels, with an emotional disorder imposing no significant restrictions, but with limitations to activities primarily dealing with things versus people and intellectual endowment pursuant to the opinion of psychologist Spangler. (R. at 23, 206-12.) In 2004, Spangler diagnosed an early onset mild dysthymic disorder and mild mental retardation. (R. at 209.) Furthermore, the record is void of any deficits of adaptive functioning. In particular, the school records show that Scott's skills were within normal limits, she passed all subjects, had regular attendance and a good relationship with teachers and students. (R. at 169, 194.)

Scott's complaints of disabling panic attacks are not consistent with her lack of treatment, her lack of medication, her activities of daily living or with the objective medical findings. Specifically, in May 2004, Scott presented to Stone Mountain Health Services for a physical. (R. at 215-16.) Scott denied any complaints and reported that she did not take any medications and that she was not interested in doing so. (R. at 215.) Scott participated in a one-time counseling session with Weitzman, who diagnosed anxiety disorder, not otherwise specified, and depressive disorder, not

-11-

otherwise specified. (R. at 202-04.) There is no evidence that medication was prescribed or that Scott returned for further treatment. (R. at 202-04.) In addition, Spangler recommended only that Scott's treatment plan should be to wean her off of Mountain Dew and incorporate birth control and HIV awareness materials. (R. at 212.) Furthermore, Scott indicated that her activities included cooking, cleaning, doing the laundry, reading to her children, playing with her children and caring for her children. (R. at 101-04.) Based on this, I find that substantial evidence exists to support the ALJ's finding with regard to Scott's residual functional capacity.

## *IV. Conclusion*

For the foregoing reasons, Scott's motion for summary judgment will be denied, the Commissioner's motion for summary judgment will be granted and the Commissioner's decision denying benefits will be affirmed.

An appropriate order will be entered.

DATED: This 12th day of June 2006.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE